1  CASPER J. RANKIN (SBN 249196)
   JARED D. BISSELL (SBN 272678)
2  ERIC J. TESTAN (SBN 268919)
   PITE DUNCAN, LLP
3  4375 Jutland Drive, Suite 200
   P.O. Box 17933
4  San Diego, CA 92177-0933
   Telephone: (858) 750-7600
5  Facsimile: (619) 590-1385

6  Attorneys for  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR
                  HSI ASSET SECURITIZATION CORPORATION TRUST 2006-OPT2,
7                 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OPT2

8

9                  UNITED STATES BANKRUPTCY COURT

10      CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

11  In re                              | Case No. 8:11-bk-12899-RK

12  HONG THI NGUYEN,                   | Chapter 13

13                                     | OBJECTION TO CONFIRMATION OF
                                       | CHAPTER 13 PLAN
14            Debtor(s).

15                                     | 341(a) MEETING:
                                       | DATE:      April 13, 2011
16                                     | TIME:      11:00AM
                                       | PLACE:     RM 1-154, 411 Fourth St.,
17                                     |            Santa Ana, CA 92701

18                                     | CONFIRMATION HEARING:
                                       | DATE:      May 12, 2011
19                                     | TIME:      10:00AM
                                       | CTRM:      RM 1-154, 411 Fourth St.,
20                                     |            Santa Ana, CA 92701

21          Deutsche Bank National Trust Company, as Trustee for HSI Asset Securitization Corporation

22  Trust 2006-OPT2, Mortgage Pass-Through Certificates, Series 2006-OPT2[1] (hereinafter "Deutsche

23  Bank"), secured creditor of the above-entitled Debtor, Hong Thi Nguyen (hereinafter "Debtor"),

24  hereby objects to the Chapter 13 Plan filed by Debtor in the above-referenced matter. American

25  Home Mortgage Servicing, Inc acts as the servicing agent for Deutsche Bank. The basis of the

26  objection is stated below:

27  _____

28      [1] This Objection to Confirmation of Chapter 13 Plan shall not constitute a waiver of the within party's right to receive service pursuant
    to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Pite Duncan, LLP's participation in this
    proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's
    participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

# I.

## **STATEMENT OF FACTS**

1.    On or about August 5, 2005, Debtor, for valuable consideration, made, executed and delivered to Option One Mortgage Corporation, a California Corporation (hereinafter "Lender") a Promissory Note in the principal sum of $476,000.00 (the "Note"). Pursuant to the Note, Debtor is obligated to make monthly principal and interest payments. A copy of the Note is attached hereto as exhibit A and incorporated herein by reference.

2.    On or about August 5, 2005, Debtor made, executed and delivered to Lender a Deed of Trust (the "Deed of Trust") granting Lender a security interest in certain real property located at 10572 Kern Ave, Garden Grove, California 92843 (hereinafter the "Subject Property"), which is more fully described in the Deed of Trust. The Deed of Trust was recorded on August 16, 2005, in the official records of the Orange County Recorder's office. A copy of the Deed of Trust is attached hereto as exhibit B and incorporated herein by reference. Thereafter, Debtor defaulted with payments under the Note and is contractually due for September, 2008.

3.    Subsequently, Lender's beneficial interest in the Deed of Trust was sold, assigned and transferred to Deutsche Bank. A true and correct copy of the Corporation Assignment of Deed of Trust evidencing the Assignment of the Deed of Trust to Deutsche Bank is attached hereto as exhibit C and incorporated herein by reference.

4.    On or about March 1, 2011, Debtor filed a Chapter 13 bankruptcy petition. Debtor's Chapter 13 Plan provides for payments to the Trustee in the sum of $174.32 per month for twenty-two (22) months. Nevertheless, Debtor's Chapter 13 Plan makes no provision for the cure of Deutsche Bank's pre-petition arrears.

5.    The pre-petition arrearage on Deutsche Bank's secured claim is in the sum of $99,612.03. A copy of Deutsche Bank's Proof of Claim is attached hereto as exhibit D and incorporated herein by reference.

6.    Debtor will have to increase the payment through the Chapter 13 Plan to Deutsche Bank to approximately $4,527.82 monthly in order to cure Deutsche Bank's pre-petition arrears over a period not to exceed twenty-two (22) months.

1    Deutsche Bank now objects to the Chapter 13 Plan filed herein by Debtor.

2                                    **II.**

3                              **ARGUMENT**

4    Application of the provisions of 11 United States Code section 1325 determines when a plan

5    shall be confirmed by the Court. Based on the above sections, as more fully detailed below, this Plan

6    cannot be confirmed as proposed.

7    **A.    DOES NOT MEET FULL VALUE REQUIREMENT**
     11 U.S.C. § 1325(a)(5)(B)(ii).
8

9    The amount of arrearage in Debtor's Chapter 13 Plan is incorrect. The pre-petition arrears

10   specified in the Chapter 13 Plan are $0.00. However, based on Deutsche Bank's Proof of Claim, the

11   actual pre-petition arrears equal $99,612.03. Thus, the Plan fails to satisfy 11 U.S.C. §

12   1325(a)(5)(B)(ii).

13   **B.    PROMPT CURE OF PRE-PETITION ARREARS**
     11 U.S.C. § 1322(d).
14

15   Debtor will have to increase the payment through the Chapter 13 Plan to Deutsche Bank to

16   approximately $4,527.82 monthly in order to cure Deutsche Bank's pre-petition arrears over a period

17   not to exceed twenty-two (22) months.

18   **C.    FEASIBILITY**
     11 U.S.C. § 1325(a)(6); 11 U.S.C. § 1322(d).
19

20   Debtor's Schedule J indicates that Debtor has disposable income of $175.00. However,

21   Debtor will be required to apply a minimum of $4,527.82 monthly to the Chapter 13 Plan in order to

22   provide for a prompt cure of Deutsche Bank's pre-petition arrears. Debtor lacks sufficient monthly

23   disposable income with which to fund this Plan.

24

25   WHEREFORE, Deutsche Bank respectfully requests:

26   1.    That confirmation of Debtor's Chapter 13 Plan be denied;

27   2.    That Debtor's case be dismissed;

28   /././

3.      Alternatively, that the Plan be amended to reflect that the pre-petition arrears listed in Deutsche Bank's Proof of Claim be paid within a period not exceeding 22 months; and

4.      Alternatively, that the Plan be amended to reflect that Deutsche Bank maintains a fully secured claim which is subject to an Adequate Protection Order requiring Debtor to maintain current Plan payments to the Chapter 13 Trustee; and

5.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: April 13, 2011            PITE DUNCAN, LLP


/s/ Jared D. Bissell
JARED D. BISSELL
Attorneys for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET SECURITIZATION CORPORATION TRUST 2006-OPT2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OPT2

| In re:<br>HONG THI NGUYEN<br><br>Debtor(s). | CHAPTER 13<br><br>CASE NUMBER 8:11-BK-12899-RK |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document described <u>Objection to Confirmation of Chapter 13 Plan</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  April 13, 2011          I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Proof of Service for CACD trustee: U.S. Trustee served pursuant to Local Bankruptcy Rule 2002-2(a) (2

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On    April 13, 2011                    I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Honorable Robert N. Kwan
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

Hong Thi Nguyen
10572 Kern Avenue
Garden Grove, CA 92843

Gary L. Harre
Law Offices of Gary Harre
1940 W Orangewood Ave Ste 110
Orange, CA 92868

Amrane (SA) Cohen (TR)
770 The City Dr So Ste #3300
Orange, CA 92868

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 13, 2011 | Megan Zerga | /s/ MEGAN ZERGA |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 9013-3.1**

Loan Number:                                      Date:  08/05/05

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

NOTE / NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

10572  KERN AVE,  GARDEN GROVE, CA 92843-5028
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S.    $476,000.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of    6.400%  . The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS  *** INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND MADE PART HEREOF***
(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  October 01   ,  2005   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
September 01   ,  2035   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at    Option One Mortgage Corporation
P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S.    $2,538.67   . This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
Southland Title Company
By
[signature]

**(D) Application of Payments**
Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES  ***INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND MADE PART HEREOF***
(A) Change Dates**
The interest rate I will pay may change on the first day of    September 01   ,  2007   , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
FIVE AND 375/1000    percentage point(s) ( 5.375%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**MULTISTATE ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family**
Page 1 of 3                                                USNT0021.wp (02-01-02)

Loan Number: _____    Date:  08/05/05

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    9.400%    or less than 6.400% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    12.400%    or less than    6.400% .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within    24 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%  of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

| Loan Number: | | Date: 08/05/05 |

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
HONG T. NGUYEN                   -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

[Sign Original Only]

Page 3 of 3                                                                    USNT0023.wp (02-01-02)

EXHIBIT A

Loan Number:                                                              Date: 08/05/05

# ADDENDUM TO NOTE
# FOR THE INTEREST ONLY PAYMENT PERIOD

**THIS ADDENDUM TO NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.**

THIS ADDENDUM TO NOTE FOR THE INTEREST ONLY PAYMENT PERIOD is made this    05    day of August    ,    2005    and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to Option One Mortgage Corporation, a California Corporation    (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:

10572 KERN AVE,  GARDEN GROVE, CA 92843-5028

ADDITIONAL COVENANTS: Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

1. Sections 3 and 4 of the Note are modified to provide for sixty (60) monthly payments of interest only ("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note. Sections 3 and 4 of the Note are modified as follows:

## 1. PAYMENTS
**(A) Time and Place of Payments**
I will pay interest during the Interest Only Period, and principal and interest thereafter during the Amortization Period, by making a payment every month.
**Interest Only Period** - The "Interest Only Period" is the period from the date of this Note through the 60th Monthly Payment    .
**Amortization Period** - The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date.
I will make my monthly payments on the first day of each month beginning on    October 01, 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on    September 01, 2035    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make monthly payments at    Option One Mortgage Corporation
Department 7821, Los Angeles, CA  90084-7821
or at a different place if required by the Note Holder.

**(B) Amount of My Interest Only Payments**
The first Twenty Four (24)  monthly payments will be in the full amount of U.S. $    2,538.67
which equals one twelfth (1/12th) of the amount of yearly interest due on the principal at the initial rate. The next Thirty Six(36) monthly payments will equal one twelfth (1/12th) of the amount of yearly interest due on the unpaid principal balance, at the time of change, at the rate determined in accordance with Section 4 of the Note. These payments are called the "Interest Only Payments."
No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of this Note.

*Interest Only Payment Period Addendum - ARM*
Page 1 of 3                                                          USD5251.wp (02-24-05)

EXHIBIT A

Loan Number:                                    ●    Date: 08/05/05

**(C) Monthly Payment Changes**

During the Interest Only period, changes in my monthly payment will reflect changes in the interest rate that I must pay. During the Amortization Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 2. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of     September 01, 2007          and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average on interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    FIVE AND 375/1000 percentage point(s) (  5.375%  ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment to be one-twelfth (1/12ʰ) of one (1) year's interest at the new interest rate.  The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   9.400%          or less than  6.400%          .  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One          percentage point(s) (   1.0%          ) from the rate of interest I have been paying for the preceding six months.  My interest rate will never be greater than 12.400%          nor less than   6.400%          .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any changes.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

*Interest Only Payment Period Addendum - ARM*
Page 2 of 3

USD5251.wp (02-24-05)

10                                      EXHIBIT A

Loan Number:                                        Date: 08/05/05

**II.** All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

**I understand that for the Interest Only Period I will not be reducing the principal balance. After 5 years if I only made my minimum payment, my principal balance will not be reduced.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in the Interest Only Payment Period Addendum.

_____ (Seal)          _____ (Seal)
HONG T. NGUYEN          -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                     -Borrower

*Interest Only Payment Period Addendum - ARM*
Page 3 of 3                                         USD5251.wp (02-24-05)

EXHIBIT A

This Document was electronically recorded by
SPL B

RECORDING REQUESTED BY:
SOUTHLAND TITLE OF SAN DIEGO

PREPARED BY AND
WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Loan Number:
Servicing Number

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||  42.00
2005000640235 08:00am 08/16/05
103 15 D11 13
0.00 0.00 0.00 0.00 36.00 0.00 0.00 0.00

_____[Space Above This Line For Recording Data]_____

## DEED OF TRUST

     THIS DEED OF TRUST ("Security Instrument") is made on    August 05, 2005
The trustor is
  HONG T. NGUYEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

                                                  ("Borrower").

The trustee is    PREMIER TRUST DEED SERVICES, INC.

                                                  ("Trustee").

The beneficiary is
    Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of        CALIFORNIA
and whose address is   3 Ada, Irvine, CA 92618

                                                  ("Lender").

Borrower owes Lender the principal sum of
  FOUR HUNDRED SEVENTY SIX THOUSAND  DOLLARS NO CENTS
              . . .AND NO/100THs  Dollars (U.S. $476,000.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on    September 01, 2035
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in          Orange          County, California:
099-454-04

LOT 84 OF TRACT NO. 3208, IN THE CITY OF GARDEN GROVE, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 105 PAGES 1 TO 4 INCLUSIVE OF MISCELLANEOUS
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

which has the address of        10572  KERN AVE, GARDEN GROVE
                                                  (Street, City)

California      92843-5028      ("Property Address");
          (Zip Code)

**CALIFORNIA - Single Family**
Page 1 of 8                                 CAD10011 (10-07-98)

EXHIBIT B

Loan Number: |                                              Date:   08/05/05

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federal related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. @ 2601 *est seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits or accounts of which are insured or guaranteed by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this

Page 2 of 8                                                                                          CAD10012 (10-07-98)

EXHIBIT B

Loan Number: |                                                   Date: 08/05/05

Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**
Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights

Page 3 of 8                                                                                                    CAD10013 (10-07-98)

EXHIBIT B

Loan Number:                                                              Date:    08/05/05

or powers of Lender or trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

   **7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

   Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

   **8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

   **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

   **10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

   If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

   Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

   **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

   **12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this

Page 4 of 8                                                                CAD10014 (10-07-98)

EXHIBIT B

Loan Number:                                                      Date:    08/05/05

Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

    **14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

    **17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

    **19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

    **20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and

Page 5 of 8                                                      CAD10015 (10-07-98)

EXHIBIT B

Loan Number:                                                    Date:   08/05/05

to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, or other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** If any monthly installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with Trustee this Security Instrument and any notes and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Borrower, shall sell the Property at the time and place specified by Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset its bid to the extent of the total amount owing to it under the Note and this Security Instrument, including Trustee's fees and expenses. Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by Trustee at the time and place last appointed for sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Substitute Trustee.** Lender may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named in this Security Instrument or acting hereunder. Such instrument shall be executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the property is situated and shall be conclusive proof of the proper substitution of such successor Trustee or Trustees. Such successor Trustee or Trustees shall, without conveyance from the predecessor Trustee, succeed to all its title, estate, rights, powers and duties. The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution permitted by law.

24. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address

                                               CAD10016 (10-07-98)

EXHIBIT B

| Loan Number: | | Date: | 08/05/05 |

which is the Property Address.

**25. Statement of Obligation Fee.** Lender may collect a fee equal to the maximum amount as may from time to time be allowed by law for furnishing any statement of obligation, beneficiary's statement, beneficiary's demand or any other statement regarding the condition of or balance owing under the Note or secured by this Security Instrument.

**26. Offsets.** No indebtedness secured by this Security Instrument shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower (or subject to Paragraph 17 of this Security Instrument, any successor to Borrower) now or hereafter may have or may claim to have against lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws) and any comparable or similar law of any other jurisdiction. Section 431.70 of the California Code of Civil Procedure provides as follows:

"Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer he barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section is not available if the cross-demand is barred for failure to asset it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

**27. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

**28. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**29. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by law.

**30. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

**31. Construction of the Security Instrument.** Borrower and Lender agree that this Security Instrument shall be interpreted in a fair, equal, and neutral manner as to each of the parties, notwithstanding the provisions of Section 1654 of the California Civil Code. Section 1654 of the California Civil Code provides as follows:

"In the cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

**32. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien reconveyances and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**33. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error. Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s).

CAD10017 (10-07-98)

18                                    EXHIBIT B

Loan Number: |                                    Date:   08/05/05

Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**34. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**35. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

**36. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ No Prepayment Penalty Option Rider | ☐ Planned Unit Development Rider | ☐ Occupancy Rider |
| ☒ Other(s) (specify) Interest Only Adjustable Rate Rider | | ☐ |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Hong T Nguyen_ _____    _____ -Borrower
HONG T. NGUYEN                    -Borrower

_____ -Borrower    _____ -Borrower

_____ -Borrower    _____ -Borrower

**[Space Below This Line For Acknowledgment]**

State of California, County of San Diego _____ }SS:

On August 10, 2005 _____ before me, the undersigned, a Notary Public

in and for said State, personally appeared Hong T Nguyen _____

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.          Signature _A Strazzo_
(Reserved for official seal)

_Anette Strazzo_
Name (typed or printed)
My commission expires: Oct 7, 2007

CAD10018 (10-07-98)

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of _San Diego_ } ss.

On _August 10, 2005_ before me, _Anette Strazzo_ ,
　　　Date　　　　　　　　　　　　　Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Hong T Nguyen_ ,
　　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_A. Strazzo_
　　　　Signature of Notary Public

**A. STRAZZO**
**Commission # 1444119**
**Notary Public - California**
**San Diego County**
**My Comm. Expires Oct 7, 2007**

─────── **OPTIONAL** ───────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
| --- |
| Top of thumb here |

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT B

GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the Notary Seal on the document to which this Statement is attached reads as follows:

NAME OF THE
NOTARY: _____A. Strazzo_____

DATE COMMISSION
EXPIRES: _____10-7-2007_____

COUNTY WHERE BOND IS
FILED: _____San Diego_____

COMMISSION
NUMBER: __1444119___ VENDOR#: ___NWA1___

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

_____

_____

_____

_____

_____

_____

_____

PLACE OF
EXECUTION: LOS ANGELES          DATE 8/11/05

SIGNATURE: _____

* Personally know to me (or proved to me on the basis of satisfactory evidence) to be the person(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s)acted, executed the instrument.

21                                    EXHIBIT B

Loan Number:                                          Date:  08/05/05

# ADJUSTABLE RATE RIDER
# FOR THE INTEREST ONLY PAYMENT PERIOD
### (LIBOR Index - Rate Caps)

**THIS RIDER TO THE SECURITY INSTRUMENT PROVIDES FOR AN
INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY
AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH
PRINCIPAL AND INTEREST.**

THIS ADJUSTABLE RATE RIDER is made       August 05, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
        Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:
        10572 KERN AVE,  GARDEN GROVE, CA 92843-5028

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**1. The Note** provides for an initial interest rate of        6.400%               . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of    September 01, 2007
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                    USR1041.wp (06-30-03)

EXHIBIT B

Loan Number:                                    Date:  08/05/05

    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

    Before each Change Date, the Note Holder will calculate my new interest rate by adding

            FIVE AND 375/1000                     percentage point(s) ( 5.375% )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

    **Interest Only Period** - The "Interest Only Period" is the period from the date of this Note through the 60th Monthly Payment. For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment to be one-twelfth $(1/12^{th})$ of one (1) year's interest at the new interest rate. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

    **Amortization Period** - The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date. During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchange during that period. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

    The interest rate I am required to pay at the first Change Date will not be greater than
    9.400%          or less than       6.400%                . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than       12.400%               or less than     6.400%                 .

**(E) Effective Date of Changes**

    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**II. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER** - Covenant 17 of the Security Instrument is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 2 of 3                                                    USR1041.wp (06-30-03)

EXHIBIT B

Loan Number: |                                    Date:  08/05/05

also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by
Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender
reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of
a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to
Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption
agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements
made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and
this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice
of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered
or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to
pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this
Security Instrument without further notice or demand on Borrower.

III. All other provisions of the Security Instrument and any Rider are unchanged by this Rider to the
Security Instrument for Interest Only Payments and remain in full force and effect.


**I understand that for the Interest Only Period I will not be reducing the
principal balance.  After 5 years if I only made my minimum payment,
my principal balance will not be reduced.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider for the Interest Only Payment Period.


_Hong T Nguyen_____ (Seal)        _____ (Seal)
HONG T. NGUYEN

_____ (Seal)        _____ (Seal)

_____ (Seal)        _____ (Seal)


MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 3 of 3                                        USR1041.wp (06-30-03)

EXHIBIT B

This Document was electronically recorded by
California Hall Service A

Recording Requested By:
**Ron Meharg, 888-362-9638**
When Recorded Return To:
**DOCX**
**1111 Alderman Dr.**
**Suite 350**
**Alpharetta, GA  30005**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

| AHMA | 647 | 27195818 |

||||||||||||||||||||||||||||||||||||||| 9.00
**2009000046351 08:00am 02/03/09**

120 8 A32 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**CRef#:02/08/2009-PRef#:A031-POF**
**Date:01/27/2009-Print Batch ID:4318**
Property Address:
**10572 KERN AVE**
**GARDEN GROVE, CA  92843-5028**
CAaosi-eR2.0  01/07/2009    2009(c) by DOCX LLC

This Space for Recorder's Use Only

### ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which is hereby acknowledged, **American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation**, whose address is **6501 Irvine Center Drive, Irvine, CA 92618**, does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over and deliver unto **Deutsche Bank National Trust Company as Trustee for HSI Asset Securitization Corporation 2006-OPT2 Mortgage Pass-Through Certificates, Series 2006-OPT2**, whose address is **1761 East St. Andrew Place, Santa Ana, CA 92705-4934**, the following described deed of trust, securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such deed of trust.

Original Borrower(s):  **HONG T. NGUYEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

Original Beneficiary:  **OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION**

Date of Deed of Trust: **08/05/2005**                    Loan Amount:  **$476,000.00**

Recording Date: **08/16/2005**    Document #:  **2005000640235**

Misc. Comments:  **ASSIGNMENT EFFECTIVE DATE 12/24/2008**

**LEGAL DESCRIPTION: LOT 84 OF TRACT NO. 3208, IN THE CITY OF GARDEN GROVE, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 105 PAGES 1 TO 4 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

and recorded in the official records of the **County of Orange**, State of California affecting Real Property and more particularly described on said Deed of Trust referred to herein.

**IN WITNESS WHEREOF**, the undersigned has caused these presents to be executed on this date of **01/29/2009.**

American Home Mortgage Servicing, Inc. as successor-in-interest
to Option One Mortgage Corporation

*Linda Green*

Linda Green
Vice President

EXHIBIT C

State of **GA**
County of **Fulton**

On this date of **01/29/2009**, before me, _____*CHERYL DENISE THOMAS*_____, Notary Public, personally
appeared **Linda Green**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY
under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Notary Public:



Cheryl Denise Thomas
NOTARY PUBLIC
Fulton County
State of Georgia
My Commission Expires
April 7, 2012

26                                    EXHIBIT C

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Hong Thi Nguyen | Case Number: SA11-12899-RNK |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| **Name of Creditor** (the person or other entity to whom the debtor owes money or property):<br>Deutsche Bank National Trust Company, as Trustee for HSI Asset Securitization Corporation Trust 2006-OPT2, Mortgage Pass-Through Certificates, Series 2006-OPT2 | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| **Name and address where notices should be sent:**<br>American Home Mortgage Servicing, Inc<br>1525 S. Beltline Road, Suite 100 N<br>Coppell, Texas 75019 | **Court Claim Number:**_____<br>(*If known*)<br><br>Filed on: |
| **Name and address where payment should be sent** (if different from above):<br>American Home Mortgage Servicing, Inc<br>Bankruptcy Department<br>1525 S. Beltline Road, Suite 100 N<br>Coppell, Texas 75019<br><br>Telephone Number: (800) 704-0800 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $569,876.59<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
| **2. Basis for Claim: Money Loaned**<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor: xxxxxx8097**<br><br>**3a. Debtor may have scheduled account as:** _____<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other: _____<br>**Describe:** 10572 Kern Ave, Garden Grove, California 92843-5028<br><br>**Value of Property:** $_____    **Annual Interest Rate:**<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: **$99,612.03    Basis for perfection: Recordation of Lien**<br><br>Amount of Secured Claim: $569,876.59    Amount Unsecured: $0.00 | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>**Amount entitled to priority:**<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | | |
|---|---|---|
| Date:<br>*March 28, 2011* | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s **Larry Buckley as Creditor's Authorized Agent**<br>972.643.6600 | FOR COURT USE ONLY |
| | P. O. Box 829009<br>Dallas, Texas 75382-9009 | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 8:11-bk-12899-RNK Claim 3-1 Filed 03/29/11 Desc Main Document Page 2 of 3
Case 8:11-bk-12899-RNK Doc 301 Filed 04/24/14 Entered 04/24/14 15:18 Page 2 of
Main Document Page 28 of 29

UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
**SANTA ANA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. SA11-12899-RNK** |
| **HONG THI NGUYEN** | § | |
| | § | **CHAPTER 13** |
| | § | |
| | § | **JUDGE ROBERT N. KWAN** |

### EXHIBIT A

ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING
DOCUMENTS FOR CLAIM OF AMERICAN HOME MORTGAGE SERVICING, INC, AS SERVICING
AGENT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET
SECURITIZATION CORPORATION TRUST 2006-OPT2, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-OPT2
REGARDING CERTAIN COLLATERAL DESCRIBED AS:
10572 KERN AVE, GARDEN GROVE, CALIFORNIA 92843-5028

### SECTION 1. ITEMIZATION OF CLAIM

- **Total Debt (As of March 01, 2011)**      $569,876.59
- **Interest Rate as of March 01, 2011**      6.40%
- **Interest from Last Paid Installment**      $79,763.01

- **Detail of Pre-Petition Arrearage through March 01, 2011**

| | | |
|---|---|---|
| 25 Payments from September 2008 to September 2010 at $2,884.71 each: | | $72,117.75 |
| 6 Payments from October 2010 to March 2011 at $3,530.06 each: | | $21,180.36 |
| | | |
| **LATE CHARGES** | | $1,408.81 |
| | | |
| **PRE-PETITION ATTORNEY FEES & COSTS** | | $3,827.49 |
|     Advertisement/ Publication Costs | $2,062.25 | |
|     Certified Mail Costs | $77.24 | |
|     Trustee Fees | $585.00 | |
|     Posting Costs | $240.00 | |
|     Recording Costs | $48.00 | |
|     Postponement Fee | $30.00 | |
|     Trustee Sale Guarantee | $785.00 | |
| | | |
| **PRE-PETITIONBANKRUPTCY ATTORNEY FEES & COSTS** | | $560.00 |
|     Bankruptcy Attorney Fees | $400.00 | |
|     Filing Costs | $150.00 | |
|     Obtain Court Documents | $10.00 | |
| | | |
| **ESCROW SHORTAGE** | | $133.59 |
| | | |
| **OTHER PRE-PETITION AMOUNTS** | | $384.03 |
|     BPO/Appraisal Costs | $300.00 | |
|     Credit Report Fees | $16.83 | |
|     Inspection Fees | $67.20 | |
| | | |
| TOTAL  PRE-PETITION ARREARAGE: | | $99,612.03 |

**TOTAL ARREARAGE**      **$99,612.03**

Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment.

Your current payment amount and any upcoming changes are provided below:

| Effective Date | Effective Amount |
|---|---|
| 04/01/2011 | $3,560.64 |

EXHIBIT D